UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Justin Buermann,                                    Civil No. 15-3964 (JRT/FLN)

                    Petitioner,

        v.                                          **REPORT AND**
                                                    **RECOMMENDATION**

Tom Roy,

                    Respondent.

_____

A.L. Brown for Petitioner
Michelle Eldien for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on
Respondent's motion to dismiss Petitioner's habeas petition (ECF No. 9). The matter was referred
to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule
72.1. For the reasons set forth below, the Court recommends that Respondent's motion be
**GRANTED** and the petition be **DISMISSED with prejudice**.

## I. FINDINGS OF FACT

The undersigned accepts the facts of this case as stated by the Minnesota Court of Appeals:

Jacqueline Buermann and [Petitioner] Justin Michael Buermann were married in
1991. At that time, Jacqueline had an eight-month-old daughter, K.T.B.; [Petitioner]
is not K.T.B.'s father. Jacqueline and [Petitioner] had two children together during
their marriage; daughter K.B. and a son. In May 2004, Jacqueline moved out of the
home with K.B. and her son, after problems arose between her and [Petitioner].
K.T.B. remained with [Petitioner] at the time. Jacqueline later testified that K.T.B.
stayed with [Petitioner] because "she wanted to stay there at that time and that's who
[Petitioner] wanted with him so that he wasn't by himself." K.T.B., who was then 13
years old, later testified that she decided to stay with [Petitioner] because she was
afraid that he would commit suicide if she moved out.

But in October 2004, K.T.B. moved in with Jacqueline after K.T.B. got poison ivy
and [Petitioner] allegedly refused to take her to a doctor. While K.T.B. lived with

Jacqueline, [Petitioner] often told K.T.B. that he was going to commit suicide because "nobody love[d] him." In February 2005, Jacqueline moved back into [Petitioner's] home with all three children, in an attempt to "work on [her] marriage with [Petitioner]." But once again, Jacqueline and the children eventually moved out.

In March 2005, K.T.B. told her sister, K.B., that [Petitioner] had been sexually abusing her since she was in the fourth grade. K.B., in turn, told K.T.B. that [Petitioner] had also sexually abused her on one occasion. The girls decided that they should tell their school counselor, Sara Pender, about the incidents of sexual abuse. On March 4, 2005, K.B. and a friend went to see Pender. Because K.B. was unable to tell Pender orally what had happened to her, at Pender's request, she wrote about the abuse on a piece of paper that she then gave to Pender. K.B. indicated that on one occasion, when she was about ten years old, [Petitioner] had "fingered" her when she was sleeping in a bed with [Petitioner] and Jacqueline. K.T.B. was also unable to tell Pender orally about her abuse, so Pender asked K.T.B. to write down what had happened to her. K.T.B. indicated that [Petitioner] had been sexually abusing her since she was in the fourth grade and had forced her to have sexual intercourse on a number of occasions.

*Buermann v. State*, No. A06-1066, 2007 WL 2601429, at *2 (Minn. Ct. App. Sept. 11, 2007) [hereinafter *Buermann I*]. Petitioner was charged with one count of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subdiv. 1(h), for the sexual abuse of K.T.B., and one count of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subdiv. 1(g), for the sexual abuse of K.B. *Id.* at *2.

At trial, the prosecution sought to introduce *Spreigl* evidence that Petitioner had a sexual relationship with a 15-year-old friend of K.T.B. *Id.* Jess Wifall, Petitioner's former roommate, testified that in November 2004, he observed Petitioner talking on the internet with this friend of K.T.B. and Petitioner told him that "they had fooled around before" and that they had "intercourse." *Id.* The internet conversation, according to Wifall, was "pretty graphic." *Id.* Steve Anderson, a prison inmate that met Petitioner in jail, testified that Petitioner said various things in jail, such as "families that play together, stay together," and "when they're old enough to bleed, they're old enough to breed." *Id.*

2

In 2006, Petitioner was found guilty of one count of first-degree criminal sexual conduct for the sexual abuse of K.T.B and was subsequently sentenced by the district court to 144 months in prison. *Id.* Petitioner entered an *Alford* plea to a second count of first-degree criminal sexual conduct for the sexual abuse of K.B. *Buermann v. State*, No. A12-1313, 2013 WL 4504324, at *1 (Minn. Ct. App. Aug. 26, 2013) [hereinafter *Buermann II*]. Following trial, Petitioner moved for a new trial and/or a *Schwartz* hearing after receiving a telephone call from one of the jurors approximately one week after trial. *Buermann I*, 2007 WL 2601429, at *2. The juror stated that he did not want to vote guilty but was pressured to do so by the other jurors and that he could not continue deliberations because of a heart condition. *Id.* The district court denied Petitioner's motion, concluding that the court was not able to inquire into the issues raised by the juror pursuant to Minn. R. Evid. 606(b) and relevant case law. *Id.*

On appeal, Petitioner was represented by a state public defender, who raised two issues: (1) the district court abused its discretion by admitting *Spreigl* evidence of Petitioner's sexual relationship with an underage friend of the victim, and (2) the district court abused its discretion by denying Petitioner's motion for a *Schwartz* hearing. *Id.* at *1. In a *pro se* supplemental brief, Petitioner also contended that he was denied the effective assistance of his trial counsel. *Id.* The Minnesota Court of Appeals denied Petitioner's appeal, finding that (1) the district court did not err in admitting the *Spreigl* evidence under the common plan or scheme exception, (2) the district court did not abuse its discretion when it denied Petitioner's motion for a new trial or a *Schwartz* hearing, and (3) Petitioner's trial counsel's assistance was not ineffective. *See id.* at *2–9. The Minnesota Supreme Court denied Petitioner's petition for review on November 13, 2007.

On January 23, 2012, Petitioner filed a petition for post-conviction relief in Minnesota state

court and moved to withdraw his *Alford* plea. Mem. in Supp. of Pet. 5, ECF No. 7. In support of his

petition, Petitioner provided a medical record indicating that K.T.B. had an "absent vagina" and

argued that this demonstrated that he was actually innocent of the crime for which he was convicted.

*Buermann II*, 2013 WL 4504324, at *1. The district court denied this petition on May 30, 2012. *Id.*

The Minnesota Court of Appeals affirmed the district court's decision, concluding that Petitioner's

petition was untimely and barred by *State v. Knaffla*, 243 N.W.2d 737 (1976). *Id.* at *1–2. The court

also concluded that even if the petition had been timely, the evidence did not establish Petitioner's

innocence or create a factual dispute requiring an evidentiary hearing. *Id.* at *2. The Minnesota

Supreme Court denied review of the appellate court's decision on November 26, 2013.

On October 29, 2015, Petitioner filed the present petition under 28 U.S.C. § 2241 for a writ

of habeas corpus. Petition, ECF No. 1. Petitioner raises four grounds for relief: (1) ineffective

assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) Petitioner's *Alford* plea

was forced by his wrongful conviction of Count 1; and (4) juror misconduct justified a mistrial. ECF

No. 7 at 18–37.

In response to the petition, Respondent filed a one-page motion to dismiss, arguing that the

petition was not filed within the one-year limitations period. Mot. to Dismiss, ECF No. 9. Petitioner

opposes the motion, arguing that his petition should be heard on the merits because "he is arguing

for a claim of actual innocence." Pet.'r's Reply Mem. 2, ECF No. 10. Despite the brevity of

Respondent's motion to dismiss,[1] the Court nevertheless concludes that Respondent's motion must

be granted and Petitioner's petition dismissed as untimely.

---

[1]

Respondent did not file a memorandum in support of its motion to dismiss and simply submitted a one-page motion stating that Petitioner's petition was not filed within the limitations period. *See* ECF No. 9.

4

## II. CONCLUSIONS OF LAW

**A.      AEDPA's statute of limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for habeas petitions filed by state prisoners. Specifically, the AEDPA states:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

It is well-established that under § 2244(d)(1)(A),[2] the statute of limitations does not start

---

[2]      While the AEDPA provides three events other than the date when the judgment became final that can trigger when the limitations period begins to run, these other events are not applicable. First, Petitioner has not identified any impediment caused

running until either the date judgment becomes final by the conclusion of direct review or the date

when the opportunity to seek such review expires:

> [T]he running of the statute of limitations imposed by § 2244(d)(1)(A) is triggered by either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ.

*Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998). Therefore, "'the conclusion of direct review'

includes the ninety days a state court defendant has to petition the Supreme Court of the United

States for a writ of certiorari." *Jihad v. Hvass*, 267 F.3d 803, 504 (8th Cir. 2011); *see also* Sup. Ct.

R. 13.1.

In the present case, the Minnesota Supreme Court denied Petitioner's petition for review of

his direct appeal on November 13, 2007. The limitations period in the matter was therefore triggered

under § 2244(d)(1)(A) on February 11, 2008—the date Petitioner's opportunity to file a certiorari

petition with the United States Supreme Court expired. Under § 2244, Petitioner had until February

11, 2009—one year after February 11, 2008—to file his federal habeas petition. Petitioner did not

file the present petition until October 29, 2015, over seven years past the deadline to file. Petitioner's

petition is therefore untimely.[3]

---

by the state that kept him from filing his petition. *See* 28 U.S.C. § 2244(d)(1)(B). Similarly, Petitioner has not alleged that the Supreme Court recognized a new constitutional right applicable to his claims. *Id.* § 2244(d)(1)(C). Finally, as discussed *infra*, Petitioner's claims are all based on evidence that was available at trial. *Id.* § 2244(d)(1)(D).

[3]

The Court observes that Petitioner filed a state court petition for post-conviction relief on January 23, 2012. ECF No. 7 at 5. This petition was not resolved until December 23, 2013, when the Minnesota Supreme Court denied Petitioner's petition

B.     **Equitable tolling**

The Eighth Circuit has, however, recognized that in limited circumstances, the statute of limitations applicable to a petition for a writ of habeas corpus is subject to the doctrine of equitable tolling. *See Jihad*, 267 F.3d at 805. This doctrine "affords the otherwise time-barred petitioner an exceedingly narrow window of relief." *Id.* "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000).

Petitioner argues that the one-year limitations period should be equitably tolled because he was defrauded by two individuals, John Wilson and Lari Zeka, who claimed to be attorneys that could assist in filing his habeas petition. ECF No. 7 at 2–3, 32–35. According to Petitioner, Wilson and Zeka were not licensed to practice law and were found criminally responsible for a conspiracy to defraud prison inmates and their families. *Id.* at 33. Petitioner states that he only discovered this fraud after receiving a letter from the Department of Justice on March 22, 2013. *Id.* at 32. These circumstances, according to Petitioner, justify the Court's application of equitable tolling. The Court disagrees.

Petitioner admits that he discovered Wilson and Zeka's fraudulent activity by March 22,

---

for further review. *Id.* However, the filing of a state court petition for post-conviction relief does not reset the one year limitations period; it simply tolls the clock while the petition is pending. *See* 28 U.S.C. § 2244(d)(2) (stating that the time during which an application for state post-conviction relief is pending is not counted toward any period of limitation); *see also Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) (holding that the time between the date of direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period). Here, Petitioner did not file his petition for post-conviction relief until after the one year limitations period had already expired, and it therefore did not affect the timeliness of the current petition.

2013. He did not, however, file the present petition until October 29, 2015, more than two-and-a-half years later. Petitioner has provided no justification for this extended delay. The Court also observes that Petitioner was able to file a state court petition for post-conviction relief on January 23, 2012 through attorney Lynne Torgerson. ECF No. 7 at 2, 5. Based on the foregoing, the Court concludes that equitable tolling is not appropriate in this case.

## C.    Actual innocence

Petitioner argues that this Court should nevertheless consider the merits of his petition because he claims he is actually innocent of the crimes for which he was convicted.[4] *See generally* ECF No. 10. The Supreme Court has recognized that a showing of actual innocence can serve as a gateway through which a habeas petitioner can have his untimely claims heard on the merits. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). However, the Supreme Court noted that such gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* "Evidence is only 'new' if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005).

In support of his claim that he is actually innocent of the crimes for which he was convicted, Petitioner states that a 2005 medical examination of K.T.B. by Dr. Ron H. Miller revealed that

---

[4]     Petitioner argues that his § 2241 petition is available under the savings clause of 28 U.S.C. § 2255. ECF No. 10 at 3. While the Court observes that § 2255 petitions only apply federal prisoners, Respondent has made no argument that Petitioner's petition is improper under § 2241. At this time, the Court assumes without deciding that Petitioner's § 2241 petition is appropriate (rather than a § 2254 petition). Regardless of which statute Petitioner's petition should have been filed under, the Court nevertheless concludes that the actual innocence standard remains the same.

K.T.B. had an "absent vagina." ECF No. 7 at 9. Petitioner did not provide the Court with a copy of this medical record. He did, however, provide a 2011 affidavit from Dr. James Ingaglio, a board certified doctor in obstetrics and gynecology, who purportedly reviewed the medical record. *See* Ingaglio Aff., ECF No. 8. According to Dr. Ingaglio, women with an absent vagina "may have a shorter vagina, a remnant of one, or lack of one all together." Ingaglio Aff. ¶ 15, ECF No. 8. Dr. Ingaglio further opined:

> At best, only the tip of a penis could possibly enter an absent vagina based on the degree of vaginal agensis such as a shorter vagina or a remnant vagina. This would not be normal sexual intercourse as people in general understand it. For a female with an absent vagina, only a half of an inch, or 1 centimeter, could enter what would normally be the vaginal area. To describe such as sexual intercourse is highly misleading. A female with an absent vagina cannot have sexual intercourse as it is understood in the general public.

*Id.* ¶ 17.

While Dr. Ingaglio's affidavit was not created until after Petitioner's trial, the medical record at issue was disclosed to Petitioner by the Government before his trial. Indeed, Petitioner admits in his petition that the record was known to him and his attorneys prior to trial. *See* ECF No. 7 at 14. This evidence is therefore not "new." *See Osborne*, 411 F.3d at 920. Although Petitioner claims that he did not discover the relevance of the report until August 2011, the Minnesota state court found this assertion "not credible and immaterial." *See Buermann II*, 2013 WL 4504324, at *1. The Court must defer to the state court's credibility determination. *See Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

Even if this medical record was considered "new evidence," the Court nevertheless concludes that Petitioner cannot meet his burden to show that in light of this evidence, no reasonable juror would have found him guilty beyond a reasonable doubt. Petitioner was convicted of violating

Minn. Stat. § 609.342, subdiv. 1(h) (2004), which states:

> A person who engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age . . . is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:
>
> . . .
>
> (h)    the actor has a significant relationship to the complainant, the complaint was under 16 years of age at the time of the sexual penetration, and:
>
>> (i)    the actor or an accomplice used force or coercion to accomplish the penetration;
>>
>> (ii)    the complainant suffered personal injury; or
>>
>> (iii)    the sexual abuse involved multiple acts committed over an extended period of time.

"Sexual penetration" includes "any intrusion however slight into the genital or anal openings . . . of the complainant's body by any part of the actor's body." Minn. Stat. § 609.341, subdiv. 12 (2004). Dr. Ingaglio's affidavit acknowledged that the tip of a penis could enter an absent vagina. Ingaglio Aff. ¶ 15. It is clear to this Court that even if Petitioner could present evidence that the victim has an "absent vagina," a reasonable juror could still find that Petitioner violated Minn. Stat. § 609.342, subdiv. 1(h).

Because Petitioner failed to provide any new evidence that could support his claim of actual innocence, his petition must be dismissed as untimely.[5]

---

[5]    In his memorandum in opposition to Respondent's motion to dismiss, Petitioner claims that a rape kit showed that no sexual intercourse transpired between Petitioner and K.T.B. ECF No. 10 at 2. However, no reports from this rape kit were submitted to this Court, and Petitioner did not discuss this evidence at any point in his 37 page memorandum in support of his habeas petition. Because Petitioner has not provided any evidence to support this conclusory statement, Petitioner's petition must be dismissed.

## III. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

A.      Respondent's motion to dismiss (ECF No. 9) be **GRANTED**; and

B.      Petitioner's habeas petition be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

DATED: April 13, 2016                              *s/Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge

## NOTICE:

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.